## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| **RITA LAVORGNA** | : |
| | : |
| **PLAINTIFF** | : |
| | : |
| **v.** | : |
| | : |
| **HAMDEN SHORELINE ORAL** | : |
| **AND MAXILLOFACIAL SURGERY** | : |
| **ASSOCIATES, P.C.** | : |
| | : |
| **DEFENDANT** | :           **JANUARY 3, 2019** |

_____


## <u>COMPLAINT</u>

### I.    INTRODUCTION

1.      This is an action to redress disability and age discrimination in violation of the

Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*.

("ADEA"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C §12101 *et seq*, as well

as the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. § 46a-60 *et seq*. Plaintiff

also alleges a violation of her free speech rights under Connecticut General Statutes § 31-51q.

### II.    PARTIES

2.      Plaintiff, Rita Lavorgna, was at all relevant times a resident of Hamden,

Connecticut in New Haven County, Connecticut and was employed as a surgical dental assistant

and office cleaner by Defendant, Hamden Shoreline Oral and Maxillofacial Surgery Associates,

P.C. (hereinafter "Defendant").

3.      At all times material to this action, Defendant maintained a place of business in New Haven County at 2560 Dixwell Ave., Suite 2A, Hamden, CT 06514, where Defendant offered major and minor oral and maxillofacial surgery procedures.

## III.   JURISDICTION

4.       The Plaintiff alleges violations of Federal statutes, ADEA and ADA. As this action arises under the laws of the United States, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over claims arising under state law.

5.       Plaintiff timely filed a Charge of Discrimination pursuant to Title VII and the Connecticut Fair Employment Practices Act with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about March 19, 2018, in which she alleged with particularity her claims of age and disability discrimination against the Defendants. Plaintiff received a release of jurisdiction from the CHRO on October 20, 2018 and the EEOC on December 15, 2018

6.       Defendant employs more than (15) employees.

## IV.   FACTS

7.      Plaintiff is a fifty-eight years old female.

8.      Plaintiff is hearing impaired. Specifically, she has profound hearing loss in both ears and must wear two hearing aids. Plaintiff has suffered hearing loss since she was five years old, which has dramatically deteriorated through the years. Even with hearing aids, she needs to see faces to read lips.

9.    As of the fall of 2017, Plaintiff had worked for the Defendant for twenty-seven (27) years in the position of a surgical dental assistant. Her employment was terminated on October 26, 2017.

10.    Plaintiff also cleaned the Defendant's Hamden office, with her husband's assistance, on Monday, Tuesday, Thursday and Friday, after the medical office closed.

11.    In or around September of 2013, Defendant opened an office in Wallingford, Connecticut.

12.    At that point, most of Plaintiff's colleagues, the other dental assistants, transferred to the Wallingford location.

13.    In the many years that Plaintiff had worked with these colleagues, she had a collegial relationship with them and they worked well together.

14.    After the transfer, Defendant hired a new group for the Hamden office to replace the transferred employees. At this point, Plaintiff's work situation began to change.

15.    The new group consisted largely of younger females substantially younger than Plaintiff. Some were in their early to mid-twenties.

16.    It was clear from the beginning that the other employees treated her like an outsider and not part of the group.

17.    It was obvious that Defendant's other employees did not view Plaintiff the same as their other younger colleagues. None of them was disabled as Plaintiff.

18.    There were numerous errors that the new employees made that created safety issues. Plaintiff had to bring these matters to their attention for safety reasons.

19.    For example, on more than one occasion used needles were left out when they should have been disposed of in accordance with safety protocols.

20.     There were also many instances where the new employees left the oxygen, nitrous oxide, nitrogen tanks on, which created a potentially dangerous situation. They also left the anesthesia machine on and medicine / drug cabinet unlocked.

21.     There were many times when the new employees ignored their job duties and spent their time on their phones texting or talking to each other.

22.     There were times when they failed to engage in hygiene protocols that resulted in their hair ending up on surgical trays and other areas where the patients were treated. They failed to clean their areas as they were required to prior to leaving for the day.

23.     The new employees heated up food and ate while patients were waiting.

24.     Plaintiff had to bring these issues to their attention so that the work was properly and timely performed, and so that no one was injured and hygiene protocols were followed.

25.     This dynamic further highlighted the age disparity as they treated Plaintiff analogically like a mother they resented.

26.     They were not sympathetic to Plaintiff's disability, they belittled her safety concerns and generally attempted to put her in her place by refusing to treat her as a colleague.

27.     In or around May 30, 2014, Ms. Josie Ardito, one of the new employees, began to complain about Plaintiff. Initially, the complaints were handled by the office manager, Ms. Antonia Pietrandrea.

28.     Despite the lack of support from the Defendant, Plaintiff complied with Ms. Pietrandrea's request that Plaintiff not direct the younger workers in any manner, but write down all issues, and bring them to her attention.

29.     The employees knew that Plaintiff was hearing impaired and that sometimes her voice became elevated without her knowing. Yet, they accused Plaintiff of yelling when that was

not the case. After this, Plaintiff made a concerted effort not to say much so that she would not offend them or give them a reason to complain. This was extremely awkward for Plaintiff but she felt she had no other choice as Defendant failed to provide her with anywhere near the level of support provided to the other employees who did not complain about safety issues.

30.     The office manager left Defendant's place of business in or around July 2016. Shortly after, a new office manager, Tara, started but left within the year. After that, there was no acting office manager to whom the concerns could be brought. Plaintiff had communicated the safety issues to Tara on many occasions.

31.     In or around August, 2017, Ms. Ally Rosadini, a Hamden employee, complained to Defendant. She claimed Plaintiff spoke to her in a manner she did not appreciate.

32.     During a meeting concerning Ms. Rosadini's complaint, Plaintiff sought to bring an end to the discriminatory treatment she had endured and explain the entire scenario, but Dr. Conforti gave Plaintiff virtually no opportunity to respond. He had Ms. Rosadini in the room when he reprimanded Plaintiff and did not listen to her side. He reacted by giving the younger employee the benefit of the doubt. And, he would criticize Plaintiff and credit everything that was said about her.

33.     In this time period, Dr. Johnson, another physician in the group, approached Plaintiff and asked her what transpired with Ms. Rosadini. It was at this moment that Plaintiff explained her side of the story and asked if she was going to lose her job. He responded that, "absolutely not, you are one of our most valued employees."

34.     Dr. Conforti sided with the other women in his office against Plaintiff. On the day of her termination, he told Plaintiff he had to let her go.

35.     The younger employees were motivated, in part, by Plaintiff's age and disability. The criticism of Plaintiff, who was a well performing employee suggests age-based and disability-based animus. Defendant condoned and encouraged the employees disparaging discrimination that marginalized and ostracized the Plaintiff.

36.     Plaintiff's employment was terminated on October 26, 2017. Dr. Conforti would not even allow her to continue cleaning the office. Plaintiff was paid $1200 per month for cleaning. The other employees were not even in the office when she clearned. She also did laundry for the practice for $120.00 per month. They discontinued that employment as well.

37.     Because of Plaintiff's disability, it is extremely difficult for her to obtain other comparable employment. She was comfortable with her position with Defendant because she knew her job duties well and did not require direction. Because of the hearing disability and the need to see faces to read lips, it is difficult for Plaintiff to start any new job wherein she is required to take direction.

38.     In working for the Defendant, Plaintiff's hearing was not a detriment to effectively doing her job because she knew her job and needed virtually no direction.

39.     Shortly after Plaintiff's termination, Dr. Gambardella, another physician in the group, reached out to her. He said he felt badly about her termination. He even gave Plaintiff a letter of recommendation. He told her that she had done a great job for him for the 27 years she worked for the practice. The younger non-disabled employees were hostile toward Plaintiff because of her age and disability and they turned Dr. Conforti against her because of their discriminatory and retaliatory animus.

40.     As part of the discriminatory and retaliatory conduct, when Plaintiff attempted to collect unemployment benefits, Defendant opposed the claim for benefits arguing that Plaintiff

had engaged in "bullying."  The Department of Labor rejected Defendant's Position and

permitted Plaintiff to collect unemployment.

### IV.   COUNTS

#### COUNT ONE - ADA

1-40.    Plaintiff incorporates herein Paragraphs 1-40 from above as if fully set forth herein.

41.    Plaintiff is an individual with a disability as defined by the ADA.

42.    Defendant discriminated against Plaintiff due to her disabilities or because she was

perceived as having disabilities. Defendant's conduct was willful.

43.    Defendant's conduct constitutes a violation of the ADA.

44.    As a result of the Defendant's conduct, the Plaintiff has suffered damages.

#### COUNT TWO – ADEA

1-40.    Plaintiff incorporates herein Paragraphs 1-40 as if fully set forth herein.

41.    Defendant discriminated against Plaintiff due to her age of 57. Defendant's

conduct was willful.

42.    Defendant's conduct constitutes a violation of the ADEA.

43.    As a result of the Defendant's conduct, the Plaintiff has suffered damages.

#### COUNT THREE - CFEPA

1-40.  Plaintiff alleges and incorporates by reference paragraphs 1 through 40 from

Count One as if fully set forth herein.

41.    Plaintiff is an individual with a disability as defined by CFEPA.

42.    Paragraph 41 from Count Two is incorporated herein as if fully set forth.

43.    Defendant's conduct constitutes a violation of the Connecticut Fair Employment

Practices Act, Connecticut General Statutes §§ 46(a)-60 *et seq.*

44.   Based on Defendant's conduct, Plaintiff has suffered damages.

**COUNT FOUR - CONN. GEN. STATS. § 31-51q**

1-40.   Plaintiff alleges and incorporates by reference paragraphs 1 through 40 from Count One as if fully set forth herein.

41.   After the hiring of the new employees, Plaintiff was continuously required to engage in speech to address the safety and the negative hygiene conditions that placed the other employees and patients at risk. Plaintiff's motivation for the speech was to protect patients and employees as well as the practice.

42.   Plaintiff's speech based on a public concern regarding safety of patients constitutes an exercise of free expression guaranteed by §§ 3, 4 and 14 of Article First of the Constitution of the State of Connecticut. Plaintiff was subjected to discipline and discharge because she spoke out on matters of public concern.

43.   Defendant by virtue of their conduct violated § 31-51q of the Connecticut General Statutes.

44.   As a result of the Defendant's conduct, the Plaintiff has and continues to suffer damages.

**WHEREFORE, PLAINTIFF CLAIMS A TRIAL BY JURY, JUDGMENT AGAINST DEFENDANTS AND DAMAGES AS FOLLOWS:**

1. Economic damages including, but not limited to: lost wages and benefits such as pension, 401k, stock, restricted stock and stock options, deferred compensation, bonuses, health, dental, life and disability benefits with interest from the date said sums were due;

2. Non-economic compensatory damages for emotional distress, harm to reputation, and loss of enjoyment of life and equitable relief pursuant to Connecticut General Statutes § 46a-104 and Connecticut General Statutes § 31-51q;

3. Punitive damages pursuant to Connecticut General Statutes § 31-51q and 42 U.S.C. § 1981a;

4. Liquidated damages pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA");

5. Attorneys' fees and costs of this action, including litigation costs and expert fees, pursuant to 42 U.S.C. § 1981a, ADEA and Connecticut General Statutes § 31-51q;

6. Interest pursuant to Conn. Gen. Stat. § 37-3a and Costs;

7. Such other relief in law or equity the court deems appropriate.


PLAINTIFF
RITA LAVORGNA

By:     /s/ Heena Kapadia 11869
        Heena Kapadia
        Law Office of Heena Kapadia, LLC
        572 White Plains Road
        Trumbull, CT 06611
        Phone:  203-288-8006
        hkapadia@heenakapadialaw.com